UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CAMILIA T. TERRY,

    Plaintiff,

vs.

MS. LT. CRAWFORD, *et al.*,

    Defendants.

Case No. 3:21-cv-35

District Judge Michael J. Newman

---

**ORDER: (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FEDERAL CLAIMS (Doc. No. 91); DISMISSING WITHOUT PREJUDICE PLAINTIFF'S REMAINING STATE LAW CLAIM; (3) TERMINATING THIS CASE ON THE DOCKET; AND (4) DENYING PLAINTIFF A CERTIFICATE OF APPEALABILITY AND *IN FORMA PAUPERIS* STATUS ON APPEAL**

---

This 42 U.S.C. § 1983 case is back before the Court on a motion for summary judgment filed jointly by Defendant prison employees Karen Bleise, Mark Foreman, Hewe McNelly, John Mobley, Mark Crawford, Elizabeth Nichols,[1] Gent Jones, Roosevelt Pope, Shelbie Smith, Annette Chambers-Smith, and David Gedeon.[2] Doc. No. 91. Plaintiff Camilia Terry, proceeding with the assistance of counsel, responded in opposition. Doc. No. 98. Defendants replied. Doc. No. 99. With leave of Court, both parties filed supplemental memoranda regarding the motion for summary judgment. Doc. Nos. 100, 101. For the reasons that follow, the Court grants Defendants' motion.

---

[1] Plaintiff named Defendant Elizabeth Nicholas in the amended complaint (Doc. No. 52 at PageID 606), but Defendant clarified that her last name is Nichols in the answer (Doc. No. 54 at PageID 632).

[2] The Court previously ruled on a motion to dismiss and dismissed multiple Defendants from this case. Doc. No. 77.

## I. BACKGROUND

Plaintiff is an inmate at Dayton Correctional Institution ("DCI"), which is operated by the Ohio Department of Rehabilitation and Correction ("ODRC"). Doc. No. 98 at PageID 2310. She has been incarcerated there since 2013 and is serving 30 years to life for aggravated murder. *Id.* During her incarceration period, Plaintiff has unsuccessfully attempted to appeal her conviction or reopen her case.[3] *See* Doc. No. 52 at PageID 611; Doc. No. 91 at PageID 1625. Plaintiff now brings claims against Defendants—all employees of DCI at the times relevant to the claims brought against them—for alleged violations of her constitutional rights. Doc. No. 52 at PageID 608-09.

### A. Access to Legal Materials

Plaintiff's legal materials and property are stored in a locked box outside of her cell, and she can only access these materials when a DCI employee unlocks the box for her. Doc. No. 89 at PageID 812. Plaintiff was allegedly denied access to her legal materials by Bleise, a DCI prison guard, on December 23, 2020. Doc. No. 89 at PageID 812. That same day, Plaintiff filed an informal complaint against Bleise using the DCI grievance system. Doc. No. 95-7 at PageID 2097. After investigating Plaintiff's complaint, Inspector Oscar Young (a non-party) granted her grievance and stated that Plaintiff should have access to her legal materials during her recreation time. *Id*. Plaintiff was able to access her legal materials at approximately 8:00 A.M. on December 25, 2020, *i.e.*, two days after the incident in question. Doc. No. 89 at PageID 830.

On December 28, 2020, Bleise wrote a conduct report against Plaintiff. Doc. No. 93-8 at PageID 1856. Bleise stated that Plaintiff violated a rule because she was unaccounted for between

---

[3] *State v. Terry*, No. 100813, 2020 WL 3467720 (Ohio App. June 19, 2020) (denying Plaintiff's application for reopening of her criminal conviction); *Terry v. Jackson*, 583 U.S. 1042 (2017) (denying Plaintiff's petition for writ of certiorari regarding the dismissal of her petition for habeas corpus).

2

12:59 P.M.—the end of the lunch period—and 1:35 P.M. *Id.* Plaintiff was placed on Limited Privilege Housing ("LPH") for two days following this conduct report, but before her conduct hearing. Doc. No. 93 at PageID 1678. Plaintiff was found not guilty of this violation at her conduct hearing and was released from LPH status. *Id.* at PageID 1857.

### B. Receipt of Legal Mail

Plaintiff also had issues related to her legal mail and the DCI mailroom. Defendant Jones worked in the mailroom of DCI. Doc. No. 90 at PageID 1311. Jones learned the difference between regular mail and legal mail when working in the mailroom. *Id.* at PageID 1405. He testified in his deposition that there were times when legal mail was opened and processed as regular mail accidentally in violation of ORDC policy. *Id.* at PageID 1407. During some shifts, Jones was the only employee working in the mailroom. *Id.* at PageID 1391-92. However, Jones testified that typically "there are several people that process mail" and that the sorting process would sometimes allow for a piece of legal mail to be opened as if it were regular mail. *Id.* at PageID 1408-09.

Plaintiff asserts her legal mail was unlawfully opened on five occasions. First, Plaintiff filed an informal complaint on April 17, 2020 alleging that her legal mail had been opened and slid underneath her cell door on April 16, 2020. Doc. No. 90-9 at PageID 1610. Jones acknowledged that he was familiar with the complaint and that "possibly […] somebody accidentally opened" Plaintiff's legal mail on that one occasion. Doc. No. 90 at PageID 1439. While Jones admitted that he discussed the incident with Plaintiff and the mail should not have then been opened, he never stated that he was the one who improperly opened the mail. *Id.* at 1450. In a separate informal complaint about being overcharged for mail, Plaintiff stated that Jones did not know who opened her mail on April 16, 2020. Doc. No. 90-10 at PageID 1612.

3

Plaintiff filed a second informal complaint on September 19, 2020 contending she received legal mail from a court—dated September 9, 2020—that had been opened and slid underneath her cell door. Doc. No. 90-12 at PageID 1616. In the complaint, Plaintiff alleges this was "the [fifth] time that this has occurred[.]" *Id.* After investigating Plaintiff's complaint, Inspector Young granted her grievance because mailroom staff admitted to delivering legal mail to the inmates without allowing them to sign for their legal mail. *Id.* at PageID 1616-17. Jones was not mentioned in this informal complaint.

On February 10, 2021, Plaintiff filed a third informal complaint stating that her legal mail from the Supreme Court of Ohio had been opened outside her presence before she picked it up in the mailroom. Doc. No. 90-13 at PageID 1618. In this complaint, Plaintiff said that she asked Jones why her legal mail was already opened. *Id.* Jones replied that an inexperienced staff member helping in the mailroom opened the piece of legal mail and was about to put it with the regular mail when Jones caught the error and resealed the mail. *Id.* The Inspector granted this grievance as well. *Id.*

Finally, Plaintiff filed two more informal complaints on February 12, 2021 and March 3, 2021 alleging she received legal mail that had already been opened. Doc. No. 90-14 at PageID 1620; Doc. No. 90-15 at PageID 1622. Both grievances were denied. Doc. No. 90-14 at PageID 1614; Doc. No. 90-15 at PageID 1623.

Jones conceded that Plaintiff had complained of having her legal mail opened multiple times and that "a couple of times it was true." Doc. No. 90 at PageID 1475. However, Jones did not state that he was the one who had improperly opened her legal mail. *Id.* Plaintiff testified that on one occasion—which she does not connect to a specific date, incident, or informal complaint—Jones told her that he had accidentally opened a piece of her legal mail and taped it closed. Doc.

4

No. 89 at PageID 909. Other than that one incident, Plaintiff admitted that she did not know who had been opening her mail, and stated only that Jones was violating her constitutional rights because he was working in the mailroom at the times that these incidents occurred. *Id.* at PageID 908.

### C. Issues with Cellmate

On July 15 and 19, 2021, Plaintiff filed informal complaints describing her requests to be moved to a different cell due to threats of violence from her cellmate. Doc. No. 95-7 at PageID 2060-62. These grievances state that Defendant Foreman and Allen (a non-party) were involved in rejecting Plaintiff's requests to be moved. *Id.* Both grievances were denied, and Plaintiff was not moved. *Id.* On August 8, 2021, Plaintiff was involved in a physical altercation with her cellmate and asserted that the cellmate attacked her. Doc. No. 95-10 at PageID 2124-26. Both inmates were injured in the incident. *Id.* at PageID 2125.

### D. Procedural History

Plaintiff initially filed this lawsuit *pro se* on July 1, 2021.[4] Doc. No. 16. On November 24, 2021, the Court issued a *sua sponte* order appointing counsel for Plaintiff. Doc. No. 36. With the assistance of appointed counsel, Plaintiff filed a final amended complaint on February 18, 2022, in which she asserts several claims for relief against Defendants under § 1983 and Ohio law. Doc. No. 52.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S.

---

[4] Accordingly, Plaintiff's *pro se* documents were liberally construed in her favor. *See Owens v. Keeling*, 461 F.3d 763, 776 (6th Cir. 2006) (citing *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005)).

317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A) and (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he non-moving party . . . may not rest upon [his or her] mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citations omitted). Additionally, the failure "to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id.* at 406.

### III. LAW AND ANALYSIS

Plaintiff now raises five claims against Defendants.[5] Doc. No. 52. Count I[6] seeks relief under 42 U.S.C. § 1983 for the alleged denial of access to the courts in violation of the First Amendment. *Id.* at PageID 620. Counts II and III[7] allege that Defendants unlawfully opened Plaintiff's legal mail in violation of the First Amendment and Ohio Administrative Code § 5120-9-17, respectively. *Id.* at PageID 620-21. Finally, Counts VI and VII[8] seek relief under 42 U.S.C. § 1983, alleging retaliation after Plaintiff filed complaints in the ODRC grievance system. *Id.* at PageID 624-25. All remaining Defendants seek summary judgment on all claims. Doc. No. 91.

#### A. Eleventh Amendment Immunity

Plaintiff brings claims against Defendants in their official and individual capacities. Doc. No. 52 at PageID 608-09. Defendants first argue that Plaintiff's official capacity claims are barred by the Eleventh Amendment. Doc. No. 91 at PageID 1628.

The Eleventh Amendment expressly provides that federal courts have no jurisdiction over "any suit in law or equity" filed "against one of the United States." U.S. Const. amend. XI. This sovereign immunity also extends to state officials sued in their official capacities. *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018). The United States Supreme Court has recognized a narrow exception to Eleventh Amendment immunity for lawsuits against government officials in their official capacities if a plaintiff seeks only non-monetary relief. *Ex Parte Young*, 209 U.S.

---

[5] In an Order following a motion to dismiss by Defendants (Doc. No. 65), the Court dismissed with prejudice Counts IV and V of Plaintiff's amended complaint. Doc. No. 77. These two claims were the only allegations against ODRC, Smith, and Chambers-Smith. Doc. No. 52. Thus, Plaintiff admits that there are no remaining claims against ODRC, Smith, or Chambers-Smith. Doc. No. 98 at PageID 2314.
[6] Count I is alleged only against Defendants Crawford, Bleise, Foreman, McNelly, Mobley, Nichols, Jones, and Pope. Doc. No. 52 at PageID 620.
[7] Counts II and III are alleged only against Defendant Jones. Doc. No. 52 at PageID 620-21.
[8] Counts VI and VII are alleged only against Defendants Bleise, Nichols, McNelly, Foreman, Gedeon, Pope, and Crawford. Doc. No. 52 at PageID 624-25.

123, 155-56 (1908). The *Ex Parte Young* exception permits a plaintiff suing a defendant in his or her official capacity to "seek prospective relief to end a continuing violation of federal law." *Doe v. Wright State Univ.*, No. 3:16-cv-469, 2017 WL 3671240, at *4 (S.D. Ohio Aug. 24, 2017) (citing *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2014)).

In this case, the *Ex Parte Young* exception does not apply. Plaintiff's amended complaint sought both monetary relief and non-monetary, prospective relief. Doc. No. 52 at PageID 625-26. However, Plaintiff only mentions three types of prospective relief: (1) a declaration that ODRC's new legal mail policy is unconstitutional; (2) an injunction prohibiting Defendants from enforcing ODRC's new legal mail policy; and (3) an injunction requiring Defendants to adhere to the previous legal mail policy. *Id.* All three of these requests for prospective relief are related to Plaintiff's claims that the ODRC's new legal mail policy violates the First Amendment, which were dismissed in a previous Order. Doc. No. 77 at PageID 719-20. Plaintiff's claims against Defendants in their official capacities are therefore barred by the Eleventh Amendment. Thus, the only remaining claims are claims for monetary damages against Defendants in their individual capacities.

### B. Access to the Courts Claim

Prison inmates have a constitutional right to access the courts under the First Amendment. *Whiteside v. Parrish*, 387 Fed. App'x 608, 613 (6th Cir. 2010). This right, however, is limited to "direct appeals, habeas corpus applications, and civil rights claims[.]" *Id.* (internal quotation marks omitted). Additionally, an inmate can only seek relief when prison officials impede access to the courts in a way that causes an actual injury and prejudices the inmate's litigation. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

8

Plaintiff claims two actions interfered with her right to access the courts: (1) Bleise allegedly prevented Plaintiff from accessing a lock box with her legal materials for two days; and (2) Jones allegedly failed to timely deliver legal mail within 48 hours pursuant to ODRC policy. Doc. No. 98 at PageID 2339-40. Plaintiff argues that a genuine issue of material fact exists as to whether either of these actions impacted the appeal of her criminal conviction in Ohio's Eighth District Court of Appeals or her habeas corpus petition. *Id.* at 2340. However, Plaintiff fails to point to anything in the record showing that she missed a deadline or was otherwise prejudiced due to Defendants' actions. *See id.* at 2339-41. Thus, Plaintiff has not shown an actual injury, and Defendants are entitled to summary judgment on this claim.

### C. Opening of Legal Mail Claims

#### i. Constitutional Claim

Inmates also have a First Amendment right to receive mail, subject to restrictions reasonably related to security. *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). Prison officials may generally open inmates' incoming mail pursuant to prison policy, but violate the First Amendment when they "open and read incoming mail in an arbitrary and capricious fashion[.]" *Id.* at 873-74. To that end, the Sixth Circuit has expressed a "heightened concern with allowing prison officials unfettered discretion to open and read an inmate's [legal] mail because a prison's security needs to not automatically trump a prisoner's First Amendment right to receive [legal] mail[.]" *Id.* at 874. When opening mail from a legal source that implicates an inmate's "legal rights, the attorney-client privilege, or the right of access to the courts[,]" the Court "must balance the interest of prison security against the possibility of tampering that could unjustifiably chill the prisoner's right of access to the courts or impair the right to be represented by counsel." *Id.* While "constitutionally protected mail can be opened (although not read) and inspected for contraband[,]"

9

prison officials must do this "in the presence of the recipient, if such a request has been made by the prisoner." *Id.* Under a prior—but no longer current—version of Ohio Administrative Code (OAC) § 5120-9-17(B)(2), "legal mail" was defined as "mail addressed to an inmate clearly bearing the return address of an attorney-at-law, a public service law office, a law school legal clinic, court of law, or the correctional institution inspection committee." Ohio Admin. Code § 5120-9-17 (effective to April 7, 2022). If a piece of mail met this description, the ORDC was required to open it in the presence of the inmate recipient. *Id.* This version of the OAC section was still in effect during all the alleged legal mail interference in this case.⁹ Doc. Nos. 1-1, 52, 98.

However, "[a] mailroom employee, by virtue of her position alone, does not become the insurer of an inmate's constitutional rights." *Salem v. Warren*, 609 Fed. App'x 281, 284 (6th Cir. 2015), *aff'g* No. 10-cv-11943, 2014 WL 11309768 (E.D. Mich. July 2, 2024). To survive summary judgment in a § 1983 suit for damages, a plaintiff must show "what *each* defendant did to violate the asserted right" and may not rely upon "conclusory, vague or general allegations[.]" *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002). Although the opening of "[t]wo or three pieces of mail […] in an arbitrary or capricious way suffice[s] to state a claim[,]" *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009), "a single instance of interference with a prisoner's [legal] mail does not give rise to a constitutional claim." *Glass v. Ramos*, No. 3:19-

---

⁹ Defendants rely extensively on ORDC's new legal mail policy and the amended, current version of OAC § 5120-9-17(B)(2). Doc. No. 91 at PageID 1635-38. In fact, both parties filed supplemental briefing regarding the recent legal developments surrounding this new policy and amended Administrative Code provision, which require control numbers to be placed on legal mail. Doc. Nos. 100, 101. However, after reviewing the record and Plaintiff's remaining claims, the Court determined, without holding, that the new policy—which requires control numbers to be placed on all legal mail—was implemented by ODRC no earlier than September 29, 2021. *See* Doc. No. 90-7 at PageID 1581. Each alleged incident of interference with Plaintiff's legal mail occurred prior to September 29, 2021. Doc. Nos. 90-9, 90-12, 90-13, 90-14, 90-15. Additionally, the Court dismissed in an earlier Order the only claims in Plaintiff's amended complaint related to the new legal mail policy and amended Administrative Code provision. Doc. No. 77. Thus, the Court will not discuss ORDC's new control number requirement.

cv-P714-DJH, 2021 WL 3008602, at *4 (W.D. Ky. July 15, 2021).

All five of Plaintiff's informal complaints allege that someone in the mailroom opened her legal mail outside her presence, but do not assert or show that Jones opened her mail. Doc. Nos. 90-9, 90-12, 90-13, 90-14, 90-15. Plaintiff testified that Jones accidentally opened her legal mail and taped it shut on one occasion. Doc. No 89 at PageID 909. Plaintiff does not connect this incident to a specific date or informal complaint she filed and does not state who sent the mail. *Id.* Plaintiff admitted that—aside from that one incident—she did not know who opened her legal mail. *Id.* at PageID 908. Additionally, while Jones acknowledged that some of Plaintiff's legal mail was improperly opened, he stated he was not the person who opened it. Doc. No. 90 at PageID 1475.

Viewing the record in the light most favorable to Plaintiff, "there is evidence that her mail was repeatedly opened in a manner that might be deemed arbitrary or capricious." *See Salem*, 609 Fed. App'x at 284. However, the record also shows that Jones—the only named Defendant for this claim—was not the only employee working in the mailroom. Doc. No. 90 at PageID 1408-09. At most, Plaintiff has shown that there is a dispute of fact as to whether Jones accidentally opened one piece of alleged legal mail on one unspecified occasion. Doc. No 89 at PageID 909. Thus, because a single incident of opening legal mail does not give rise to a constitutional claim, a reasonable jury could not conclude that Jones violated Plaintiff's rights by opening her legal mail in an arbitrary and capricious manner. *See Glass*, 2021 WL 3008602, at *4. Jones is therefore entitled to summary judgment on this claim.

### ii. State Law Claim

Plaintiff's remaining legal mail claim, as noted, arises out of state law. "Once [a] district court dismisse[s] all of the claims over which it ha[s] original jurisdiction, it act[s] squarely within

11

its discretion by declining supplemental jurisdiction over the remaining [state law] claim[s] and dismissing [them] without prejudice." *Booker v. City of Beachwood*, 451 F. App'x 521, 522–23 (6th Cir. 2011) (citing 28 U.S.C. § 1367(c)(3)). To that end, the Sixth Circuit has held that "[g]enerally, once a federal court has dismissed a plaintiff's federal law claim[s], it should not reach state law claims." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see Smyer v. Kroger Ltd. P'ship*, 2024 WL 1007116 (6th Cir. 2024).

The Court finds that comity concerns weigh in favor of declining to exercise supplemental jurisdiction to avoid needlessly deciding state-law issues. Accordingly, Plaintiff's state-law claim is dismissed without prejudice.

### D. Retaliation Claims

Last, Plaintiff brings two retaliation claims: one under the First Amendment and one under the Fourteenth Amendment. Doc. No. 52 at PageID 624-25. The standards for analyzing these two types of claims are not the same. *Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999). However, the Sixth Circuit has stated that when an Amendment provides an explicit constitutional protection, that Amendment must be used to analyze the claims instead of the more generalized right to substantive due process under the Fourteenth Amendment. *Id.* Here, the First Amendment properly covers Plaintiff's retaliation claims because she asserts that the alleged adverse actions were taken because she used the DCI grievance system. *See id.*; Doc. No. 52 at PageID 625.

"It is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Thaddeus-X*, 175 F.3d at 386. In order to establish a retaliation claim, Plaintiff must show: (1) she "engaged in conduct protected by the

Constitution[;]" (2) "the defendant[s] took an adverse action against [her;]" and (3) the "adverse action was taken (at least in part) because of the protected conduct." *Id.* at 386-87.

In her amended complaint, Plaintiff alleged four instances of retaliation in response to her use of the DCI grievance system: (1) Bleise verbally abused her during the COVID-19 pandemic while not wearing a mask; (2) Pope and Crawford physically destroyed her belongings and legal property; (3) Bleise and McNelly placed her into a heightened level of detention based on fabricated claims of wrongdoing; and (4) Foreman forced her to cohabitate with a threatening cellmate. Doc. No. 52 at PageID 619, 624. However, Plaintiff fails to point to any evidence in the record that substantiates the verbal abuse incident or the destruction of property incident. *See* Doc. No. 98 at PageID 2315-27. Additionally, Plaintiff's amended complaint brings retaliation claims against Defendants Nichols, Gedeon, Pope, and Crawford (Doc. No. 52 at PageID 624), but she fails to explain how these four Defendants were involved in the alleged retaliation. *See* Doc. No. 98 at PageID 2315-27. Because the non-moving party cannot rest on the pleadings and cannot expect the Court to search the entire record for material facts, summary judgment related to these two alleged instances of retaliation and these four Defendants is appropriate. *See Viergutz*, 375 Fed. App'x at 485; *Guarino*, 980 F.2d at 404.

### i. Protected Conduct

Plaintiff addresses the third and fourth instances of retaliation—the heightened level of detention and the forced cohabitation with a threatening cellmate—in more detail. Filing non-frivolous grievances against prison officials is conduct protected by the First Amendment. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). Plaintiff claims that Defendants Bleise and McNelly retaliated against her once she filed an informal complaint concerning access to her legal materials. Doc. No. 98 at PageID 2318-19. The record shows that Plaintiff filed this informal complaint

through the DCI grievance system on December 23, 2023. Doc. No. 95-7. After investigation, this grievance was granted. *Id.* Plaintiff also claims that Defendant Foreman retaliated against her due to the filing of two informal complaints concerning her requests to be moved to a different cell to avoid a threatening cellmate. Doc. No. 98 at PageID 2325. The record shows that Plaintiff filed these informal complaints on July 15, 2021 and July 19, 2021. Doc. No. 95-7 at PageID 2060-62. While these grievances were denied, the record shows that Plaintiff was later involved in a physical altercation with that cellmate and indicated that the cellmate attacked her. Doc. No. 95-10 at PageID 2124-26. Viewed in the light most favorable to Plaintiff, a reasonable trial of fact could find that these grievances were not frivolous. Thus, Plaintiff has sufficiently established the first element of a retaliation claim for both alleged incidents.

### ii. Adverse Actions

To satisfy the second element of a retaliation claim, Plaintiff must point to evidence showing that an adverse action was taken against her. *Thaddeus-X*, 175 F.3d at 396. An action is adverse when it "would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Id.* (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). Plaintiff describes two adverse actions.

First, Plaintiff claims that Bleise and McNelly placed her on LPH as retaliation for filing an informal complaint concerning access to her legal materials. Doc. No. 98 at PageID 2319. The Sixth Circuit has concluded that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse." *Hill*, 630 F.3d at 474. An inmate on LPH "is considered general population and shall have access to prison services, although that access can be reasonably limited as part privilege reduction" by controlling the inmate's movement and reducing her access to other inmates. Doc. No. 97-3 at PageID 2221. The record shows that Plaintiff was placed on LPH for

14

two days. Doc. No. 93 at PageID 1678. Viewed in the light most favorable to Plaintiff, a reasonable jury could find that her placement on LPH was an adverse action.

Second, Plaintiff asserts that Foreman refused to move her to a different cell after she filed informal complaints regarding threats of physical harm by her cellmate. Doc. No. 98 at PageID 2325. Assignments to a specific cell or cellmate "are a normal part of prison life" that "typically do not amount to an adverse action." *LaFountain v. Harry*, 716 F.3d 944, 949 (6th Cir. 2013). However, in some circumstances, specific threats of violence by a cellmate may be considered an adverse action. *Id.* (concluding that a cellmate's threat to use knives on a plaintiff was a foreseeable consequence of the defendants' refusal to move the plaintiff to a different cell and would be an adverse action). Thus, viewed in the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether refusing to move her to a different cell constitutes an adverse action.

### iii. Causal Connection

Finally, Plaintiff must establish "a causal connection between the protected conduct and the adverse action[.]" *Thaddeus-X*, 175 F.3d at 399. To survive summary judgment, Plaintiff must put forth more than conclusory allegations of malice. *Id.*; *see Murray v. Unknown Evert*, 84 Fed. App'x 553, 556 (6th Cir. 2003) (explaining that "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct" and that "[c]onclusory allegations of retaliatory motive" are insufficient to create a genuine issue of fact for trial). After Plaintiff has established that her "protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Thaddeus-X*, 175 F.3d at 399. Defendants can satisfy this burden and are entitled to summary

judgment if they "can show that [they] would have taken the same action in the absence of the protected activity." *Id.*

First, Plaintiff does not show a causal connection between her informal complaint about Bleise and her placement on LPH. The record shows that McNelly placed Plaintiff on LPH after Bleise wrote a conduct report alleging that she was unaccounted for on December 28, 2020. Doc. No. 93 at PageID 1677; Doc. No. 97 at PageID 2154. Bleise wrote the conduct report because Plaintiff did not sign in and out of the block as required. Doc. No. 93 at PageID 1678. Plaintiff was placed on LPH after the conduct report was written but before she was found not guilty of the alleged violation at a conduct hearing. Doc. No. 97 at PageID 2154. However, Plaintiff does not point to any evidence in the record supporting the assertion that Bleise and McNelly placed her on LPH because she reported Bleise's conduct concerning access to legal materials. *See* Doc. No. 98 at PageID 2319, 2324. In fact, while Plaintiff's own testimony is somewhat contradictory, she at least recognized that Bleise wrote the conduct report because she went to another place in the prison without properly signing out or obtaining a pass. Doc. No. 89 at PageID 1016.

In addition to Plaintiff not satisfying the burden of production, Defendants offer an explanation for placing Plaintiff on LPH and restricting her privileges during this time. Doc. No. 91 at PageID 1642. McNelly stated that inmates were regularly put on LPH after a conduct report while they awaited a conduct hearing. Doc. No. 97 at PageID 2154. Additionally, this was not Plaintiff's first alleged offense; she was found guilty on December 28, 2020 of being out-of-place on both December 23 and 24, 2020 and was given restrictions due to these offenses. Doc. No. 93 at PageID 1676-77; Doc. No. 89 at PageID 1013. Thus, Defendants Bleise and McNelly are entitled to summary judgment on the retaliation claim related to Plaintiff's heightened level of detention. *See Murray*, 84 Fed. App'x at 556.

16

Second, Plaintiff does not show a causal connection between her informal complaints about cohabitation with a threatening cellmate and Foreman's refusal to move her to a different cell. Again, Plaintiff fails to point to any evidence in the record supporting the claim that Foreman's refusal to move her was motivated by her grievances. *See* Doc. No. 98 at PageID 2327. Additionally, Plaintiff admitted that Allen—a nonparty—might have been the one that refused to move Plaintiff to a different cell instead of Foreman. Doc. No. 89 at PageID 1034. Moreover, the record shows that there were other reasons why Plaintiff may have been refused a cell change: she had a ticket when DCI policy required her to be ticket-free for six months before she could request a move. Doc. No. 95-7 at PageID 2060. At another point, it appears that Allen placed cell moves on hold for all inmates. *Id.* Thus, Defendant Foreman is entitled to summary judgment on the retaliation claim related to Plaintiff's cohabitation with a threatening cellmate. *See Murray*, 84 Fed. App'x at 556.

### E. Qualified Immunity

Individual state actors performing discretionary functions are entitled to qualified immunity with regard to § 1983 claims unless the allegations, "when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is "clearly established" when "existing precedent ... placed the statutory or constitutional question beyond debate." *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015) (citing *al-Kidd*, 563 U.S. at 741, 131 S.Ct. 2074). Here, because Plaintiff's § 1983 claims fail on the merits, Defendants are also entitled to qualified immunity regarding those claims.

## IV. CONCLUSION

For the reasons stated, the Court (1) **GRANTS** Defendants' motion for summary judgment (Doc. No. 91) regarding Plaintiff's federal claims; (2) **DISMISSES WITHOUT PREJUDICE** Plaintiffs' remaining state law claim; and (3) **TERMINATES** this case on the docket. Pursuant to 28 U.S.C. § 1915(a)(3), the Court hereby **CERTIFIES** to the United States Court of Appeals for the Sixth Circuit that an appeal by Plaintiff would be frivolous and not taken in good faith. Consequently, Plaintiff should not be permitted to proceed *in forma pauperis* on appeal, and the Court **DENIES** Plaintiff a certificate of appealability.

The Court takes this opportunity to thank *pro bono* counsel who zealously litigated this case and very ably assisted Plaintiff.

**IT IS SO ORDERED.**

March 18, 2024                          s/Michael J. Newman
                                                       Hon. Michael J. Newman
                                                       United States District Judge